Oh yay, oh yay, oh yay. All persons have any amount of form of business before the Honorable United States Court of Appeals for the Fourth Circuit, I march you dry now and give their attention, for the court is now sitting. God save the United States and its Honorable Court. Thank you. Good morning. Please be seated. Welcome to the Fourth Circuit. We are pleased to have Judge Schroeder from the Middle District of North Carolina here to assist Judge Wynn and myself today. And our first case is Vannoy v. Federal Reserve Bank. Ms. Kelly? Yes, sir. We'll be glad to hear from you. Thank you. With me at counsel's table this morning is Attorney Elizabeth McKenzie. There are many, she will not be arguing, there are many facts at play in this case, many of them unclear, confusing, and disputed. But there are a wealth of facts that are squarely in favor of John Vannoy. And I would like, if I may, focus the court's attention on those things that the court really has to decide today. With respect to FMLA interference, Mr. Vannoy's case goes to the heart of what the FMLA is. It established a right for employees to take 12 weeks and have their job protected. The job protection is what made the taking of that leave a reality. There is no dispute in this record that the bank never gave Mr. Vannoy the mandatory required notice of job protection. No way, no how, not written, and not oral. When was he entitled to this notice? When? Yes. Within five days of the bank. I mean the date here, what date triggered the fact that he should be, when was the bank required to give this notice, what date? Notice of rights and responsibilities that Sandra Heard later said was mailed contrary to the corporate designee's testimony, even if it was sent, it doesn't matter because it doesn't contain any job protection notice. So you're, I'm guessing you're, or you tell me if I'm summarizing this incorrectly. You have two grounds to say that there are facts in dispute that would override the grant of a summary judgment, require a trial. One, he says he didn't get a notice, they said they sent one. And secondly, even if that was not in factual dispute, whatever they sent wasn't adequate. Absolutely. You really don't need to decide the mailbox rule or anything like that because even if he got it, it was deficient. It's a mandatory notice that goes to the heart of the FMLA. He didn't got it. He didn't get it. Prejudice is the second step for an interference claim. So did it interfere with Mr. Vannoy's ability to exercise his right to take that leave? He got nine days, November 11th through the 14th. He was entitled to 12 weeks. All of the testimony in this record indicates that Mr. Vannoy would have taken, right after St. Mary's, additional medical leave to enter into rehabilitation for depression and alcoholism to very, very early on in his career. He had two highly stigmatizing disabilities and health conditions. That's why I started out asking you when was it that he was entitled to the notice because the two considerations Judge Agee definitely are considerations to make and that is, you know, is it adequate or did he even get it? I mean, those seem to be questions of fact, but the first question is whether he was entitled to such a notice. And I brought that up because of the interesting facts here. He was in the hospital. He came back to work before, and I think while he was there, was he not given leave by the employer? While he was in the hospital? While he was in the hospital, his family texted Matt Harris and Dr. Brew and told them what was going on. So the family got together. They were directed to go to Dr. Brew. Sandra Heard, out of health services, gave the family short-term disability forms. No FMLA forms. No ADA forms. So what did he get then? Short-term disability? They granted him short-term disability. And in the forms, they never even gave him a notice of designation. They're mandatory rules under the regulations to give him a notice of designation. And by the way, in mandatory… Is that what you say is the prejudice? I mean, if he got short-term disability, presumably he got paid, right? The prejudice, no, the prejudice here, Your Honor, is that he did not… What is the prejudice? If he got a benefit, you're saying he didn't get the correct benefit to which he was entitled. So what's the prejudice because of that? What's the issue for trial? The prejudice is that he did not get the full entitlement of his 12 weeks of leave. He had the right to do that to get the care that he needed. This Court's opinion in Reed v. Buckeye, the plaintiff argued that… Well, if he got short-term disability, is that counted against his FMLA leave? It is in this case because it was synonymous. The bank considers it… I'm asking because I don't know enough about FMLA to say, but if he's entitled to X number of weeks and the short-term disability is not counted against the FMLA leave time, then he would have all of his FMLA leave intact. Of course, he has to know about it, but that's what's confusing me about your argument. I don't think you need to concern yourself with that, honestly, because he still had all but nine days left to take. He's entitled to a full 12 weeks. He only had nine days. He rushed back to the bank because all of the testimony in the record is he was scared to death he would lose his job. He missed going to the Baltimore project because he was in the hospital. He was anxious about that. He knew his managers wanted him to go, and he told everybody, I have to get back. That's why he didn't know that they had put him on leave. He wanted to go back because he was afraid of his job, and that is the core of the FMLA. That is the core of the interference here. When he went back, though, they told him, you can't stay here. Didn't they? Didn't they tell him, and that's when he had to go get, well, I guess he got to the doctor then to change his date. Well, in the notice of designation that the bank was required to provide under the FMLA but did never provide, it was required to tell Mr. Vinoy in the notice of designation if it was going to require a return to duty fitness certification. So not telling him anything about what he might have to do to come back was in itself another violation of the federal regulations, and not minor here because the bank seems to want to rely upon that. That is 29 CFR 825-300-D3. Designation notice. They never did it. The closest thing was an email not even addressed to Mr. Vinoy from Sandra Heard to Brenda Lutter telling her how to code his time in the system. So you don't maintain he didn't know about possible eligibility for the Family Medical Leave Act. I guess what you maintain is the employer didn't comply with the notice requirement because, I mean, he did sign that statement that says, you know, I'm applying for short-term disability, and if I'm eligible, I want this Family Medical Leave Act. It doesn't tell him anything about what that means. It's a very important component of the entire structure of this law, the rights and responsibilities notice that is mandatory to the employee. Short-term disability is not equivalent to FMLA at all. FMLA gives him certain specific federal rights. So, number one, he was prejudiced, but to your point, Judge Winn, no, as a matter of fact, in this record, it's again undisputed, he did not know. His unequivocal testimony is that I did not know that the FMLA applied to me or my condition. Family and Medical Leave Act, he knew of the acronym FMLA, but he didn't know that it could apply to him. And it doesn't matter, the Reid v. Buckeye opinion from this court says it doesn't even matter if the plaintiff had some knowledge of the FMLA. He didn't know that it just. The trial court, in its order, was pretty directive and seemed to be pretty straightforward in saying the employer had really bent over backwards and done everything it possibly could do in it. And I'm just wondering as I read this and as we approach this kind of an issue, does it make a difference in this case, and it's not really brought out, but it just looks to me, that what he is dealing with here is depression and alcoholism? Yes, sir. So the many things that, you know, coming back to work and leaving early and not doing certain things, maybe it takes a medical opinion to connect those things, but it seems to me the nature of the disability here sort of informs the fact that he did some things that are inconsistent, it looks to me. With one who is, what the trial court requires is you've got to give some kind of notice. The employee has to kind of let the employer know they want this. I mean, in the case of a pregnancy or something like that, it's pretty clear you can give notice of that. But here, I'm just wondering to what extent the illness itself informs a different result here than if you had the boilerplate instance of family medical leave or surgery or something like that. And on that point, I would offer a case that is not in Mr. Vannoy's briefs, Martinson v. Kenny Shue Corporation, 104F3-683, that held that not only the disease, but the attributes, the physical attributes and symptoms of whatever the person is dealing with the disability are both disabilities. So that discrimination on the employee for the symptoms of the disability also constitutes illegal discrimination. And I would like to bring to the Court's attention December 6th, which is a very important day. Let me ask you before I don't want your time to run out here. Is the bottom line in terms of what creates a jury issue here deal with the notice? Well, the bottom line is summary judgment never should have been granted to the bank. Tell us very specifically now what there is about the notice that's defective. It was not given to him. He never received any notice, written or oral, of job protection. Okay, we already went through that. Yes. You said we wouldn't even have to deal with that because the notice itself was defective. That's what I'm asking you about. You don't have to deal with whether he received it or not really. Because even if he received it, it's defective. The core issue Okay, now. Yes, sir. Tell us why it was defective. Because it never gave him notice of his job protection. Okay. JA-206, read it one end to the other. There's absolutely nothing in there. That is the heart of the FMLA. That is the heart of what happened to John Vannoy. If he knew he could take time off work and his job would be protected, it's okay, John. You can go into rehabilitation and your job will be protected. It's okay. All of the evidence in this record is that he would have. You're saying that if summary judgment had been granted, it should have been granted for you, based on what you're saying. Because if in fact he was entitled to it, and you're telling us that the law is very clear that it's defective on his face, what is the result you want us to run in this case? I won't disagree that summary judgment may be appropriate here on liability. We didn't move for it. It was a big rush in the district court. But the prejudice part in this record. You don't expect it up here. At the very least, you'd go back and see if he did that. Yes, sir. But to your point, Judge, that's right. The key facts here on interference really are undisputed. And they are in Mr. Vannoy's favor. A lot of the noise that the defense makes. Your argument would be that at a minimum, this creates a jury issue. Therefore, summary judgment. Absolutely and positively. We've only dealt with the interference claim so far. But yes, absolutely. At a bare minimum, yes. The jury needs to hear that it was a clear error for that district court to grant summary judgment in the bank's favor on an FMLA interference claim. My time is out. May I continue? I am for rebuttal. Yes, sir. Thank you. When you come back, would you address prejudice?  All right. Mr. Nagel. May it please the Court. My name is David Nagel. I'm accompanied at the council table by Ms. Tyler, an associate with my firm, and Ms. Nunley, the deputy general counsel of the Federal Reserve Bank. How does the Federal Reserve Bank have a notice that doesn't comply with the statute? I would respectfully assert that the notice that was sent and consistent with the mailbox rule, we have a declaration from Ms. Hurd who sent it. We have a copy of the notice at pages 206 and 207 of the joint appendix. And while the notice requirements do not specify that there be any indication of the amount of leave, the phrase, the single phrase that Ms. Kelly is focused upon is that the regulations make reference to job-protected leave. The notice that the bank sends out specifies that he has FMLA time available of 480 hours. In addition, I would draw the Court's attention to multiple other places where he had received notice, including the phrase job protection. The general notice that the bank has included in its personnel policies, which is joint appendix 95 through 102. Does that entitle you to summary judgment? I beg your pardon, sir? Does that entitle you to summary judgment? I mean, wouldn't that be a credibility issue for the jury? No, sir. All right, tell us why. It would not, Your Honor, because frankly, an interference claim doesn't arise until his right to FMLA leave is established. And as the District Court pointed out, he got all the leaves that he requested. I'm begging your pardon. So he was never denied any FMLA leave that he had requested. He's the one, as Judge Wynn pointed out, who cut the 30-day leave that he had been granted down to three days, which he was very persistent at in reducing it to that, taking a notice back to the physician twice to be completed. But isn't it the point that if he had been properly informed of his rights from their perspective, which is disputed, then he would have taken the additional period of time. He thought he was on some type of short-term disability, which would, I guess in his mind, could affect his employment or whatever. There's a lot of rights that come under the Feminine Medical Leave Act. And his point is it wasn't that he came back early or cut it short, but the failure to give the notice triggered him to not take the additional time. Sir, with all due respect, I would point out that he had already returned when the bank had the form and was able to respond on it. He had returned to work before even being released by his physician on it. But I would say if you look at – Doesn't the meeting that they had, though, was it on the 16th when he returned? Didn't they have a discussion about him, whether or not he's going to be able to continue to work? And he kept reiterating how he wanted to make sure they understood he wanted to work. I mean, why does that not create a fact issue for the plaintiff in this case? Because that was two days later. He made no request for leave at that time. His physician had just signed a form saying that he was being returned to work without any restrictions and without any plan for continuing treatment. I thought that the plaintiff disputed the account of that meeting. Disputed what, Your Honor? I'm sorry, I didn't hear you. The plaintiff disputed the account of the meeting. He had one version and the bank has a different version. Maybe I have the wrong – I think we accepted his representation and his sworn deposition testimony. His deposition testimony said that he didn't make any request for leave. He says not at that time, not at that time. So we accepted, for purposes of summary judgment, his description of the meeting. Isn't that, though, the plaintiff's point that he didn't ask for it because he was afraid to? Your Honor, he had policies. He had a form that he had just signed two days earlier that said, I understand that in applying for short-term disability benefits, I am also applying, if eligible, for family and medical leave. Under the FMLA, each employee is eligible for a maximum of 480 hours per rolling 12-month period. It's very difficult, Your Honor, as quickly as the employer had been to grant the leave while he was out, and his signature on this form two days later for him to assert that he had no idea that he had any leave available. You're saying it's unreasonable as a matter of law for him to have claimed that he didn't know. I would suggest that the form, which while Ms. Kelly represents that he was given no notice of eligibility or rights and responsibilities, I would notice that the form at JA 206 and 207, which is called Notice of Eligibility and Rights and Responsibilities, undisputed in the record that Sandra Heard, the FMLA analyst for the bank's health services unit, said that she mailed it out and it was not returned. I understand that Mr. Benoit asserts that he didn't receive it. Is that enough to create an issue of fact? No, sir, not under the Fourth Circuit. The bank doesn't have any evidence that he actually received it. That's correct, Your Honor, but the legal presumption of the Fourth Circuit is recognized of the mailbox rule. It was not. But when you have someone to stand up and testify to the contrary, it creates an issue. I would respectfully assert, Your Honor, that it really doesn't in this case. He had extensive information that had been provided in at least three different packages. He had had ongoing communication with health services. It's really exalting form over substance to take the weight. But that's a fact that needs to be settled, and it may look like it's in your favor, may look the other way. But let me ask you about the notice itself. The regulations do require that the notice inform him of job restoration. And I don't think this notice gave that, did it? The regulations do not specify that a particular form be used, but among the factors that are listed is job protection. It says the notice must inform the employee of the right to restoration to the same or equivalent job. Yes, sir. And did this notice do that? It did not include that phrase. That's kind of his point here. That is the rub of this case. Yeah, that goes to where we are on this case. That's his point. He says, I came back. I didn't, you know, the short-term disability doesn't do that. I mean, but the Family Medical Leave Act, if you give that notice, you know, he feels like he can go on and, you know, take the leave and come back to his job or an equivalent job. Your Honor, with all due respect, that notice has been provided to Mr. Vinoy on multiple occasions in this instance. Isn't that going to be a jury question, though? And, I mean, you may have a winner. No, sir. I mean, with respect to Mr. Vinoy's own testimony, he was familiar with the personnel policies that were on five spot in the first sentence. Does he admit that he knew? You say he's familiar with the policies. Does he admit? I asked him with respect to his accessing personnel policies. Does he admit that he knew about job restoration? Surely he didn't admit that. We wouldn't be here. Certainly. That's correct, Your Honor. Where in the basic leave entitlement that you referred to earlier, where does it? The first sentence, Your Honor, says purpose to ensure. Which page are you on? Page JA95 states the purpose is to ensure compliance with the Family and Medical Leave Act and applicable state family medical leave laws. The bank provides eligible employees with unpaid job protected leave for qualifying family or medical reasons, FMLA leave. Is that the notice or is that the policy? That's the general notice that is required under the regs. As you'll recall, the regulations. Everybody gets that? Yes, sir. That's to every employee you have? Yes, sir. I don't think that's the kind of notice we're talking about here when you get ready to go on leave. I think you have to give a specific notice to this employee. I don't think you can just put it in your general policy manner and say from now on no one gets any more notice. We are not suggesting that in any way, Your Honor. But the same regulation that you just cited that requires the notice of eligibility also requires the general notice that I was just reading from. It's the preceding paragraph. And it says that you can put it in a handbook and you don't have to use the exact form. And there's no question. Well, then under that analogy, you didn't need to send that letter, did you? Of course we had to send the letter, Your Honor. You already gave the notice. Just put it in the general policy. That's not an argument I've advanced, Your Honor. I've not suggested that for a moment. In fact, the – Well, I'm not getting the point of the general policy then. If the general policy doesn't give the notice and you're required to give notice under CFR, and that regulation says you must tell this person that he's entitled to have his job restored, and your point is the general policy basically tells them that, but it wasn't in the specific notice, then I'm missing your point. My point, Your Honor, is that he has been informed multiple times of the policy and the source of additional information communicated frequently with him. The phrase job protection is all that is missing from the document on pages 266. Let me ask you this. Let me ask you this. If either defective or no notice is not provided, no notice is provided, and yet – That's not the case, Your Honor. Let me ask you this because I want to follow up. And yet you can prove that the person here knew every one of those regulations by memory, knew every part. You can get up here. He got on the stand and said, I knew every bit of this. But you never provide a notice at all. Would that be an instance in which someone could claim a violation of the notice on the regulation? Fortunately, Your Honor, we had the U.S. Supreme Court address that issue and pointed out that the regulations here have to be taken into consideration with the Congressional Balancing Act of the purpose of this statute. You will recall that in the – What's the answer to that question? Yes, no. What's the answer to the question? Would that be a technical violation that results in no harm to the individual? No claim. Otherwise, is it a violation – I'm not trying to be argumentative. I'm just trying to – I'm trying to get a basis here for your point in terms of the general policy here. And my question is, if you prove he had actual knowledge by the fact that his testimony or whatever, but you never gave a notice whatsoever, would that be a violation? That would be a technical violation the statute provides for a $100 fine. Between a technical one and a non-technical one, is it the same thing? Wouldn't your answer there be that he couldn't prove prejudiced in that sort of sense? Correct. Because I'm assuming that if he's memorized the entire statute that he would comply with it, and therefore he would take advantage of the protected leave. That's the point of this statute here. So your argument here is going to the issue of prejudice, not the question of whether this was defective or not, which it could have been. But even if it was, you're saying he wasn't prejudiced because he knew. Correct. There can be no claim if he suffered no harm, if he suffered no prejudice from it. He got all of the leave to which he was entitled. He's the one who cut his FMLA short. There was no interference in November. He says he would have done this differently, which sounds to me an awful lot like a – we'll just assume for purposes of argument that there's a notice problem. So now we're just on prejudice. And my understanding of opposing counsel's argument in their brief is that had I known about this, I would have structured all of what I did differently. That's my prejudice, which sounds to me like a jury argument. I would respectfully assert, Your Honor, that it is really not a jury argument because that is an issue that really goes to whether the technical form of the notice controls or the notice. There can't be any interference with his rights if he didn't have any injury that was served occasionally. But opposing counsel says – this is just what I recited – he does have an injury. He would have structured all of this differently had he known about it. Your Honor, if the court wishes to create new laws saying that that's interference with the FMLA, that is currently unsupported by any law that I've been able to find anywhere and certainly any law that Ms. Kelly has been able to find. Interference requires that he either be denied FMLA or suffer some other monetary loss. That's the – and forgive me, I'm trying to find – Ragsdale v. Wolverine worldwide. That was the Supreme Court decision, you may recall, where a previous regulation had specified that if the employer failed to give a designation notice that the leave was going to count as FMLA, then the employee was automatically entitled to 12 weeks. Well, in that case, the employer had already provided 30 months of medical leave under its own policy. Far more – I'm sorry, 30 weeks. Far more than is required under the FMLA. The individual brought a claim of interference based on being denied an additional 12 weeks after receiving an FMLA notice. Department of Labor took it up, Eighth Circuit affirmed summary judgment for the employer, and it went to the Supreme Court. And the Supreme Court emphasized the purpose of this statute is a remedial protective statute, not like Title VII, but rather to make sure that an employee had the job-protected time and found that that regulation was punitive because it allowed for an employee to get benefits on the basis of a purely technical violation, paperwork violation by the employer. And the Supreme Court said prejudice, injury is required. And that is the reason that summary judgment was appropriate here. It was crystal clear that Mr. Benoist suffered no injury. He got the leave that he requested. The only other instance in which he can claim interference is on his last day of work when he says, quote, I have no business being here, and asserts that that's a request for leave. Well, it isn't. As Judge Posner in the Aubuchon case from the Seventh Circuit said, if you have brain cancer but tell your employer you have a headache, you have not given the notice the FMLA requires. So that comment that I have no business being here can't be construed as a request for FMLA leave. He simply did not suffer any injury. He was granted all leave that he requested, all leaves that he had documentation for. He, in fact, is the one who insisted on cutting it short. Focus on his claim that prejudice is here because he would have taken additional time had he been properly informed. It is an assertion that was never made either to health services or to anyone else at the bank prior to the summary judgment response. I think that's the first time we heard of that argument being advanced. It was not in the appeal of his termination. Assuming it is evidence that should be considered for purposes of summary judgment, that is his assertion, would that be sufficient to establish prejudice in this case, at least for summary judgment dispute purposes? As a matter of law, I would respectfully say no, Your Honor, because he has to show that he has a right that was interfered with. He has to show, I would have gone out, but they wouldn't let me. And it wasn't interfered with, Your Honor. Didn't his family members testify, too, to corroborate his statement that he would have taken this addition? And, you know, the question I ask is Kelly Steele's lingering with me, and that is we are talking about an individual with an alcohol and depression problem. And so all the things he's doing is consistent, maybe from a not legal perspective, but it seems from common sense. It sort of follows this is the kind of thing you're probably going to get someone with that kind of condition. And when you couple that with the fact that, at the best, this notice that was actually sent didn't have that in it, you'd have to go to the policy or somewhere else to get it. And also the fact that he's out on leave, but he comes back, and he comes back when he doesn't have to, because he has a short-term disability. He comes back because he's trying to protect his job, he says, I guess. And he wouldn't have done it from his perspective if he'd known he had the Family Medical Leave Act that says, you got all this time, and we have to give you your job back, or a job like it. I mean, doesn't that create an issue of fact? And as Judge Azias pointed out on several occasions, that doesn't mean you lose. It just means you don't get it as a matter of law. Well, two things, Your Honor. One is I think it's helpful to recall the discussion that went on in Congress when the Americans with Disabilities Act was before the Congress, and there was considerable debate over whether alcoholism should be recognized as a disability under the ADA. And the compromise that Congress reached is language that would include it being covered, but with very specific language saying that the employer can still hold the employees to the same standards as other employees. So to the extent, Your Honor, that perhaps there would be a basis otherwise for being more forgiving on the need to. And that covered depression, too. It was written to address alcoholism because that's what Congress was talking about at the time. Well, those provisions may doom the substantive claims here, but as far as the interference claim is concerned, that's on a different footing. I would agree, Your Honor. Congress and the Department of Labor have opened these doors. I mean, they're the ones that have the authority to do that, and we don't really have the authority to close them as long as there's a factual dispute. Yes, I would remind you, though, the regulations do not suggest that the template, for instance, that Ms. Kelly offered as an attachment to her response to summary judgment, we don't have to use that notice. We don't have to use that general one. In fact, the notice of eligibility under the Department of Labor regulations doesn't even have to be written. It can be provided orally to the employee, which is frankly, Your Honor, I would submit all consistent with the Supreme Court's interpretation that we're really not talking about form here. We're talking about substance. We're protecting employees' right to have job-protected leave. He absolutely had the right to have job-protected leave. He was given that right. Each time the form he was given, it said he had 480 hours available. I frankly don't understand how that can be read to say, and by the way, we'll fire you Friday. I don't understand how someone can receive a notice that tells them they have 480 hours and there be a concern on that language as to whether that's job-protected. It's pure surplusage. The gist of everything, is there anything you wanted to add as a parting, very short notice? Yes, sir. I think that the retaliation claim fails as well as a matter of law because it can't establish the prima facie case, and even if you had to bank off for the legitimate nondiscriminatory reasons, we didn't get into the ADA or the discovery issues, but if there aren't any questions on those, then I'll have my seat. Thank you. Thank you very much, Mr. Kelly. Thank you, gentlemen. Mr. Kelly, you've got some rebuttal time. So why don't you start by reminding us of the prejudice that Mr. Fennoy suffered here by favor to get the proper notice. I would just start by quoting Reed v. Buckeye. The plaintiff there, in fact, got 13.5 weeks, more than the FMLA requires of 12 weeks. This court reversed summary judgment and held that the plaintiff should be able to go to trial to prove that he could have restructured his medical, and I'm quoting this court, he could have restructured his medical care to return within the 12-week time frame and consequently would not have been fired by Buckeye. I offer also Wallace v. FedEx Corporation, where the plaintiff actually sat down, they talked to her about the FMLA. She knew her rights and was told, I want you to take this form to your doctor, fill it out, and they told her come back in 15 days. However, they violated the regulation by not telling her the consequences. She also was trying to get over withdrawal from pain medications and had joint and whatnot problems. She went home, went into a funk, didn't get it back in 15 days, and they fired her for violating the attendance policy. The Sixth Circuit reversed and said they violated the regulation, and she says that she would have brought it back if she knew the consequences as the regulation mandatorily tells the employer you have to tell her. So to go to Mr. Nagle's point, the Ragsdale Supreme Court case, yes, Judge Wynn, it would be a technical violation. The issue, as you have focused, Judge Agee, was there prejudice. So yes, there was prejudice because Mr. Vinoy would have scheduled. He was being constantly criticized and written up for failing to communicate, which, by the way, his despondency, his withdrawn, are all symptoms of depression that irritated Robert Mintier. Robert Mintier testified that his unscheduled absences and his ability to follow simple instructions, tease up the disability perfectly for us, is what caused his termination. That's the man who recommended it to Janice Clatterbuck and told her also in the termination meeting, by the way, that he was not behaving like a leader, he doesn't answer me, he's despondent. He didn't play out drunk for three days in Baltimore. That would seem to give most employers ample cause to fire somebody. Well, he was depressed in his room. Let's keep in mind that the... He may have been depressed in his room, but the regulations are pretty clear that the actual acts that you engage in, in the abuse of alcohol, are not protected. So if he had been just recovering from heart surgery and suffered some sort of relapse and went to his hotel room, the employer had already given him FMLA qualifying leave for the heart condition. He went to his hotel room because he suffered a relapse on his heart condition and, by the way, abused alcohol. Would that negate the FMLA qualifying leave? No. The regulations say if the employee takes... But in this case, he takes the employer's vehicle, drives to Baltimore, gets drunk, plays out drunk in his room... Not drunk, sir. Well... Not drunk. There appears to be quite a bit of evidence to that effect. But there he is in his room, not reporting for work for three days, whether drunk or not. That seems to be a fairly deficient action on the part of the employee. And, you know, if the bank cared about it, they would have talked to him about that, and they would have mentioned it as a reason for his termination. I would cite this Court's opinion in the Kenny Shoe case, footnote one, where this Court observed that that employee who had epilepsy had fallen down in the stock room, had knocked down display cases, and was found, by the way, unconscious with a lit cigarette on his chest. However, this Court dispensed with all of that white noise after complaining about the plaintiff because they never cited it as a reason for termination, nor did the bank care. They knew about what was going on in Baltimore. Robert Mintier testified that he called John Vannoy because he got a report he spelled alcohol in his breath. John Vannoy wears two hearing aids. He took them out and turned off his phone. He testified what a dark time he was in in Baltimore. He was really depressed. The first day back to work, he presented himself to Dr. Brew. He said, I'm depressed. What else could he say? He absolutely followed unknowingly the regulation to a T. They had granted him FMLA leave for depression. The regulations say any subsequent leave for the same condition, all you have to do is refer to the condition. He did exactly as he should have done. The fault here is the bank. They try to push all of the responsibility on John Vannoy. It's their responsibility to know the law. It's their responsibility after Baltimore and after December 21st to say, wait a second. We have all this notice. We've had notice from July and, by the way, all the way to Sally Green in February of 2011. When Mr. Vannoy was first out, was he out on FMLA leave initially? During November. Well, his FMLA, I'm not sure when you mean he was first out. In other words, when he was out for treatment over the weekend, yes. He was admitted to St. Mary's November 10th. Was that not FMLA? It was FMLA. That's my point. So he's put out, given FMLA leave, and then he comes back and the bank says, well, we don't want you back yet unless you have a doctor's order. Which was a violation because they didn't tell him that in the designation notice. I'm sorry. And so he then comes back, though, but the doctor, it seems that the two orders come in and the second of the two says he is able to return to full duty. Right? So, in other words, he's better and able to work. Nothing. What is the bank supposed to do? It seems to me that the unusual aspect of this case is it does look like the bank went to great lengths to try to accommodate him. And if there was a difficulty, the supervisors didn't want to get into his personal mental health condition when he tried to start talking about it. And they said, you know, we don't really need to know all that. And so there's a little bit of a disconnect between the health services folks and him. But it seems like they went to great lengths to try to accommodate him. Even after the Baltimore fiasco, they even put him on an improvement plan. They didn't fire him at that point in time, even though there's some evidence that maybe they could have. So I guess my question is, when the bank gets this doctor's note that says you are good to go and you can return to work, you're healthy enough to work, what does that do with respect to the interference claim? Anything? No. No. I mean, like I said, it really is not a minor point that it's not an FMLA document. And this Court's opinion, Miller v. AT&T, the burden is on the employer. So if I were the employer and I have two signed both on November 12th by Dr. Stein, one saying depression, one saying alcohol treatment for 30 days, and he's released only on depression, wouldn't an employer who has the obligation under the law to follow up and ask questions say, well, wait a second, what about this 30 days? We better follow up with John Vinoy. Does he know that he can leave from work to take the treatment? So when an employee shows up with a doctor's note saying they are free to come back to work and they're able to work, if they haven't been given the FMLA notice, then the employer has an additional duty to inquire? I'm saying that what Dr. Stein signed addressed solely and specifically short-term disability, total disability. It did not say it supersedes the alcohol. It did not say he's never going to need leave again. It said nothing about that. It said as of this date, for short-term disability purposes, John Vinoy is no longer totally disabled. That's the language on the form. And that's why I direct the Court's attention to the Miller v. AT&T, because it was their obligation to give them the proper forms. If they wanted to know about leave, do you need more leave? What about this 30 days? I understand. Thank you. Thank you very much. Thank you. We appreciate the argument of counsel. We'll come down and agree counsel and then go on to our next case.
judges: G. Steven Agee, James A. Wynn, Jr., Thomas D. Schroeder